ÁNGEL LUIS RODRÍGUEZ RAMOS, demandante y recurrente, *v.* COMISIÓN ESTATAL DE ELECCIONES, PARTIDO POPULAR DEMOCRÁTICO, ESTADO LIBRE ASOCIADO DE PUERTO RICO, ET AL., demandados y recurridos.

*Número:* RE-88-178    *Resuelto:* 13 de mayo de 1988

*Ángel Luis Rodríguez Ramos, pro se; Rafael Ortiz Carrión, Procurador General, y Lorenzo Villanova Alfonso, Procurador General Auxiliar*, abogados del Estado Libre Asociado de Puerto Rico, *Manuel E. Andreu García*, abogado del Partido Popular Democrático, *Héctor A. Colón Cruz*, abogado de la Comisión Estatal de Elecciones, recurridos.

## RESOLUCIÓN

Considerado los méritos del recurso a la luz de las comparecencias de los recurridos Comisión Estatal de Elecciones *et al.*, se provee no ha lugar al mismo.

*Regístrese y notifíquese por escrito y por vía telefónica.*

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió voto disidente.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Voto disidente del Juez Asociado Señor Negrón García.

Expediríamos el auto y revocaríamos el dictamen desestimatorio del Tribunal Superior, Sala de Bayamón, en cuanto a la Comisión Estatal de Elecciones y el Partido Popular Democrático (P.P.D.). Ordenaríamos que a la brevedad posible éstos desfilaran la prueba con que cuentan para rebatir los siguientes hechos presentados hasta esta etapa ante dicho foro.

## I

La mañana del viernes 15 de abril de 1988 llovió copiosamente en el área metropolitana. Durante la misma, Ángel L. Rodríguez Ramos —elector *bona fide* del P.P.D.— acudió a las oficinas designadas de la Comisión Estatal de Elecciones situadas en Puerta de Tierra, San Juan, para presentar sus peticiones de primarias para la candidatura al cargo de Senador por el Distrito de Bayamón. Por razón de lo limitado del área de estacionamiento, tuvo que dejar su vehículo a cierta distancia del edificio de la Comisión Estatal de Elecciones. Para evitar que se mojaran y afectaran sus peticiones, optó por dejarlas en su vehículo. Al arribar al local había una gran aglomeración de otros candidatos aspirantes. La Sra. Alba Nydia Marrero estaba en su interior y representaba a Rodríguez Ramos. Tenía el número de turno correspondiente al 33. Continuaba lloviendo. Advertido de que debía tener sus peticiones dentro del local, poco antes del mediodía, Rodríguez Ramos salió y le indicó al guardián que iba a buscarlas, para lo cual acercaría su automóvil al área próxima de la Comisión Estatal de Elecciones. Cuando intentó entrar después de las 12:00 P.M. le fue negado el acceso.

Ante esta situación, el martes 19 de abril presentó en el tribunal de instancia una petición de *injunction* preliminar y permanente contra el Estado Libre Asociado, el Gobernador Hon. Rafael Hernández Colón, la Comisión Estatal de Elecciones, el Partido Popular Democrático y otros funcionarios relacionados con el proceso primarista.

En esencia, pidió que dicho foro ordenara a la Comisión Estatal de Elecciones recibir y evaluar sus peticiones. A solicitud del Estado, el foro de instancia desestimó por no aducir en su contra causa de acción que justificara un remedio. En cuanto a la Comisión Estatal de Elecciones y el P.P.D., en virtud de la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, también desestimó, pero fundamentado en

que el Art. 4.009(a) de la Ley Electoral, 16 L.P.R.A. sec. 3159(a), dispone que sólo podrán presentarse las peticiones de inscripción "hasta el mediodía del 15 de abril". Concluyó que Rodríguez Ramos no fue diligente en su reclamo (incuria). Razonó lo siguiente:

> El peticionario debió ser consistente, tanto con la legislación aplicable como con la justicia del caso. Si resolviéramos a su favor, a estas alturas, estaríamos siendo severamente injustos con los demás candidatos que compitieron con el peticionario, ya que estaríamos concediéndole una ventaja extraordinaria equivalente a la inobservancia en cuanto a él de la disposición expresa de la ley citada anteriormente. Quedaría el peticionario con *la ventaja de haber podido validar sus peticiones de endoso más allá del 15 de abril y hasta que finalmente nuestra orden a su favor llegara a tener efecto en este procedimiento.* Estimamos que el peticionario debió haber traído al Tribunal junto con su recurso y como exhibit del mismo la documentación que alega que la Comisión le denegó su radicación. En esa forma se hubiera reducido el riesgo de *grave ventaja* que para su caso tendría el que resolviéramos a su favor en esta etapa. (Énfasis suplido.) Sentencia de 25 de abril de 1988, pág. 3.

## II

Erró el tribunal sentenciador.

Claramente el recurrente Rodríguez Ramos fue diligente y solícito en acudir dentro de las primeras cuarenta y ocho (48) horas laborales al tribunal. Matemática ni procesalmente resulta oponible la defensa de incuria.

El razonamiento del foro de instancia para aplicar esta defensa en aras de "garantizar fielmente la honradez y pureza del proceso electoral", aunque laudable, no es procedente ni justo. Veamos.

La negativa del tribunal se apuntala más bien en que Rodríguez Ramos no presentó en la vista judicial las peticiones que tenía disponibles y, por ende, a juicio del magistrado,

acceder a su solicitud crearía la ventaja de poder permitirle "validar sus peticiones de endoso más allá del 15 de abril" y hasta que la orden judicial fuera efectiva. Este enfoque presenta serias dificultades.

Primero, ciertamente no estaba ante la consideración del tribunal ni le correspondía entrar a considerar la suficiencia numérica y validez intrínseca de tales peticiones. Ello era función del Presidente de la Comisión Estatal de Elecciones en unión al Comisionado Electoral del P.P.D. Art. 4.013 (16 L.P.R.A. sec. 3163). Segundo, de haber accedido el tribunal al remedio, no creaba ninguna ventaja. Tampoco se afectaba *la pureza del proceso.* Los formularios de peticiones de primarias aludidos son especiales, cuyo diseño y contenido son rigurosamente confeccionados y reglamentados por la Comisión Estatal de Elecciones. Al ser cumplimentados, *tienen que ser jurados* por el elector que endosa al aspirante ante funcionarios o electores expresamente autorizados por la Comisión Estatal de Elecciones. Éstos, a su vez, "deberán llevar un récord de todas las personas y de la *fecha* en que se ha tomado el juramento. Este récord será firmado y remitido a la Comisión al finalizar el período durante el cual se pueden radicar peticiones de primarias". Las peticiones juradas deberán numerarse en serie cronológica. (Énfasis suplido.) Art. 4.011 (16 L.P.R.A. sec. 3161).

Es evidente, pues, que todo este estricto esquema documental y reglamentario rodea de garantía circunstancial de veracidad la suscripción de las peticiones. Evita —salvo fraude que no habremos de presumir— que un candidato a primarias pueda, con posterioridad al 15 de abril, seguir obteniendo válidamente peticiones de inscripción juradas y así aventajar a otros aspirantes. La preocupación del foro de instancia, aunque legítima, pertenece al ámbito de lo conjetural.

En resumen, las circunstancias peculiares presentes que concurren en el caso de autos nos mueven a concluir que erró

el tribunal sentenciador al desestimar su acción contra la Comisión Estatal de Elecciones y el P.P.D. Debimos devolver a dicho foro el caso, con instrucciones de que lo evaluara, luego de que la Comisión Estatal de Elecciones y el P.P.D. hubieran desfilado su prueba. De no poder éstos rebatir los hechos antes expuestos, Rodríguez Ramos sería acreedor a presentar inmediatamente ante la Comisión Estatal de Elecciones las peticiones de primarias que posee que fueron juradas *en o antes del mediodía del 15 de abril de 1988*. De ser válidas en número suficiente, y haber completado los demás requisitos, tendría derecho a ser certificado como aspirante a Senador por el Distrito Senatorial de Bayamón en las primarias del P.P.D.